SAMUEL, Judge.
This is a suit on an open account for $741.46. Defendant has appealed from a judgment in favor of plaintiff as prayed. The sole question before us is whether plaintiff extended the credit to the defendant personally or to a corporation he represented.
The six charges involved are for hotel accommodations during the months of January, February and March of 1963. Four are for accommodations received by the defendant and the remaining two are for accommodations received by another person, H. E. Kirkpatrick. Defendant was a representative of Metro Metals and made trips to that corporation’s plant at Pennsauken, New Jersey. The plant is just two miles from plaintiff’s establishment in Haddon-field, New Jersey, and defendant stopped at the hotel on frequent business trips beginning in August, 1962. Kirkpatrick was a director of Metro Metals. On each of the two occasions he stopped at the hotel Kirkpatrick left without signing the daily ledger sheets and at the request of the management the defendant signed for him, charging the bills to Metro Metals by making such a notation on the documents he signed. Although the record does not reveal the date thereof, Metro Metals did go into bankruptcy and plaintiff was listed as a creditor of the bankrupt for the charges in suit. Plaintiff made no effort to press the claim in the bankruptcy proceedings.
The evidence before us consists of some of plaintiff’s records, one styled “Application For Credit Account” and the.others “check out slips” covering, the six bills in *24 suit, and the testimony of two witnesses, plaintiff’s comptroller and the defendant.
The comptroller testified as follows: The credit was extended only to the defendant after the defendant had filled out the application therefor. ■ He was under the impression that statements had been sent to the defendant but was able to produce none; he admitted his bookkeeper mailed all statements and that he had no knowledge of whether they were mailed to the defendant or to the corporation. He did not deny that similar charges incurred as a result of the defendant being $ guest at the hotel between September, 1962 and January, 1963 had been paid by the corporation and admitted plaintiff may have received checks from the corporation in payment of those bills. This witness’ testimony is of little value except as to the admissions made and his statement that the ’ credit was extended to defendant and not to Metro Metals.
Defendant testified: He had been a frequent guest at plaintiff’s hotel commencing in August, 1962. He paid cash for the bills incurred by him during that month and thereafter his corporation, Metro Metals, made arrangements with the plaintiff to have his bills charged to the corporation. From September, 1962 through March 16, 1963 he stayed at the inn on frequent occas-sions and charged his expenses to Metro Metals. Prior to January, 1963 all of those bills were paid by the corporation. He has never received a bill from the plaintiff; all bills after August, 1962 were sent to the corporation. The only demands he has received were from a collection agency and later from plaintiff’s attorney; in each case those demands were for the charges in suit after the corporation had failed to pay them and after his last visit to plaintiff’s hotel. On his last visit in the latter part of March, 1963, subsequent to the last charge in suit, he was informed by plaintiff’s manager that no further credit would be extended to Metro Metals because of its financial condition; they insisted that he pay his current account, which he did. No demand was made at or prior to that time that he pay all or any part of the charges in-suit. As a director of the corporation Kirkpatrick was authorized to charge his bills to the corporation and plaintiff accepted these charges as a part of the corporation’s credit.
The application for credit account contains nothing more than defendant’s signature, his address, 607 Northline Street, Me-tairie 20, La., the corporation’s name and its address, 1301 Union Avenue, Pennsauken, New Jersey, the corporation’s bank and its address, defendant’s personal bank and its address, and the name of a reference. Typed on the application are the words “LIMIT: $75 CO 50 PERSONAL”. The comptroller explained the quoted portion as plaintiff’s limitations on the cashing of company or personal checks. From a reading of the document referred to as an application for a credit account we are not able to ascertain with certainty that the credit was extended to the defendant as distinguished from the corporation.
As we know that statements were rendered and payments made for accommodations during September through December of 1962, it occurs to us that the most important fact involved in a determination of whether the credit was extended to the defendant or to his corporation is whether plaintiff sent statements to the defendant or to the corporation during the period between September, 1962 and March 16, 1963, the date of the last charge in suit. This encompasses the time during which, in the ordinary course of business, plaintiff must have billed and sent statements to the one to whom it had extended the credit. It also includes a time durjng which the corporation was not involved in bankruptcy. On this question the only testimony (given by the defendant) is that these bills were sent to the corporation and never to the defendant. Similarly, the only evidence as to who paid the bills incurred from September of 1962 through December of the same year is that all of those bills were paid by the corporation.
*25 We are of the opinion that the “check out slips”, which were introduced in evidence by the plaintiff, support the defendant’s testimony that the corporation, and not the defendant, was billed for the charges in suit and that statements for the same were sent only to the corporation. The so-called “check out slips” are ledger sheets and plaintiff’s comptroller testified that the bills mailed by his bookkeeper actually were copies of the original ledger sheets.
The ledger sheets show the date of each charge, an explanation thereof (as room, restaurant, long dist., etc.), the amount of each charge and the balance. In the lower right corner of the final sheet of each charge is printed “Transfer to City Ledger” and thereunder are lines for the guest’s signature, the person (or firm) to whom the account is charged, and the latter’s address. In every case the defendant’s signature appears in the line provided for that purpose and the charge is to “Metro Metals, 1301 Union Ave., Pennsauken, N. J.”, all written by the defendant. In the upper left corner of the ledger sheets resulting from Kirkpatrick’s residence at the hotel appears Kirkpatrick’s name with the address “New Orleans, La.” The defendant’s name and the name “Metro Metals” appear in the upper left corner of each of the ledger sheets arising out of the defendant’s residence at the hotel. In one instance the defendant’s address, as “New Orleans, La.”, appears under his name followed by the name “Metro Metals”. No address for the defendant is contained on any of the other ledger sheets. In the upper left corner of each ledger sheet involved in the three other charges resulting from defendant’s residence at the hotel appears the address of the corporation as “Pennsauken, N. J.”
In view of the fact that the ledger sheets just described and the bills made by plaintiff’s bookkeeper are identical, in the absence of some evidence to the contrary (and there is no such evidence) it appears that the statements must have been mailed only to the corporation. In the usual course of his work the bookkeeper would have mailed the statements to an address which appears on the ledger sheets and, in addition to the fact that the final ledger sheet of every charge states the account is charged to Metro Metals, the corporation’s address is the only effective mailing address which appears on any of the ledger sheets. Plaintiff’s address appears on just one charge and then only as “New Orleans, La.” This is not an effective mailing address; as the defendant lived in Metairie, Louisiana, mail addressed to him by way of general delivery in New Orleans could not have reached him.
We conclude that plaintiff extended the credit to the corporation and not to the defendant.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of the defendant, Wilburn E. Moore, and against the plaintiff, Cherry Hill Inn, dismissing said plaintiff’s suit; all costs in both courts to be paid by the plaintiff-appel-lee.
Reversed.